AUSA: Jorja N. Knauer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK SIMON,<br><br>        Defendant. | **IDENTITY AFFIDAVIT**<br><br>25 Mag. 839 |

SOUTHERN DISTRICT OF NEW YORK, ss.:

      KEITH PELLERIN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

      On or about February 28, 2025, the United States District Court for the Southern District of Florida issued a warrant for the arrest of "Mark Simon" (the "Warrant") based on an indictment charging conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (the "Indictment"). Copies of the Warrant and Indictment are attached as Exhibit A and Exhibit B, respectively, and are incorporated by reference herein.

      On or about March 12, 2025, I participated in the arrest of MARK SIMON, the defendant, in the Southern District of New York. I believe that MARK SIMON is the same person as the "Mark Simon" who is wanted by the United States District Court for the Southern District of Florida.

      The bases for my knowledge and the foregoing charge are, in part, as follows:

      1.      I am a Special Agent with FBI. I have been personally involved in determining whether MARK SIMON, the defendant, is the same individual as the "Mark Simon" named in the Warrant. Because this Affidavit is being submitted for the limited purpose of establishing the identity of the defendant, I have not included in this Affidavit each and every fact that I have learned. Where the contents of documents or records and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

      2.      Based on my review of documents from the United States District Court for the Southern District of Florida, I know that on or about February 28, 2025, the United States District Court for the Southern District of Florida issued the Warrant based on the Indictment.

      3.      On or about March 12, 2025, at approximately 6:00 AM, other law enforcement agents and I arrested MARK SIMON, the defendant, at a residential building in Putnam Valley, New York (the "Residential Address").

4.  Based on my participation in this arrest, my conversations with other law enforcement officers, and my review of law enforcement records, I believe that MARK SIMON, the defendant, is the same person as the "Mark Simon" wanted in the Southern District of Florida based on the following:

   a.  At approximately 6:00 AM, a law enforcement agent ("Agent-1") called a phone number, which I know from my review of law enforcement databases and from my participation in this investigation is used by the "Mark Simon" wanted in the Southern District of Florida. MARK SIMON, the defendant, answered the call from inside the Residential Address and identified himself as "Mark Simon." At Agent-1's direction, SIMON came to the front door of the Residential Address, where he was subsequently placed under arrest. SIMON confirmed his identity and provided to law enforcement his address, date of birth, and Social Security number, all of which match the address, date of birth, and Social Security number that are identified on law enforcement databases and records as associated with the "Mark Simon" who is wanted in the Southern District of Florida.

   b.  Shortly thereafter, a person who identified herself as the spouse of MARK SIMON, the defendant, provided a United States passport for "Mark Simon." I believe the person depicted in the passport photograph is MARK SIMON, the defendant, whom I arrested at the Residential Address.

5.  Accordingly, I believe that the "Mark Simon" sought in the Warrant is MARK SIMON, the defendant.

WHEREFORE, I respectfully request that MARK SIMON, the defendant, be imprisoned or bailed, as the case may be.

_____
KEITH PELLERIN
Special Agent
Federal Bureau of Investigation

Sworn to before me this 12th day of March, 2025.

_____
THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York

# Exhibit A

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| MARK SIMON | ) | Case No. 25-CR-20081-ALTONAGA/REID |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |

FILED BY ___BM___ D.C.

**Feb 28, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* Mark Simon,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h)

Certified to be a true and correct copy of the document on file
Angela E. Noble, Clerk,
U.S. District Court
Southern District of Florida
By _BryanMartinez_
Deputy Clerk
Date _Feb 28, 2025_

Date: 02/28/2025

_____
*Issuing officer's signature*

City and state: Miami, Florida

Angela E. Noble, Clerk of Court / Court Administrator
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____ |
| *Arresting officer's signature* |
| *Printed name and title* |

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CR-20081-ALTONAGA/REID

18 U.S.C. § 1956(h)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

v.

MARK SIMON,

Defendant.
_____/

FILED BY____BM____D.C.

Feb 25, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

1. **MARK SIMON** was a resident of the state of New York and owned/operated a jewelry store in the state of New York.

2. The co-conspirators were members of a South American Theft Group ("SATG") that was engaged in, among other things, acts of robbery, theft, and burglary, and which operated in the states of Florida, Georgia, California, and elsewhere. The co-conspirators targeted traveling jewelry salespersons and jewelry stores, stealing assorted jewelry, cash, and other goods. The members of the SATG were primarily Colombian nationals or of Colombian descent.

### COUNT 1
**Conspiracy to Launder Monetary Instruments**
**(18 U.S.C. § 1956(h))**

1. Paragraphs 1 through 2 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around September 2019, through on or about August 4, 2021, in the Southern District of Florida, and elsewhere, the defendant,

**MARK SIMON,**

did knowingly and voluntarily combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct, and attempt to conduct, a financial transaction which involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and control of the proceeds of said specified unlawful activity, in violation of Title18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951; Interstate Travel or Transportation in Aid of Racketeering, in violation of Title 18, United States Code, Section 1952; Transportation of Stolen Goods, in violation of Title 18, United States Code, Section 2314; and Sale or Receipt of Stolen Goods, in violation of Title 18, United States Code, Section 2315.

### PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for **MARK SIMON** and his co-conspirators to enrich themselves by laundering the proceeds obtained through the SATG robberies, thefts, and burglaries of jewelry, cash, and other goods. After stealing the jewelry, members of the SATG would sell the stolen jewelry to **MARK SIMON**, who would purchase the stolen jewelry below market value, and, in exchange for the stolen jewelry, would pay cash to the members of the SATG.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **MARK SIMON** and other conspirators known and unknown to the grand jury sought to accomplish the purpose of the conspiracy included, among others, the following:

4. Members of the SATG robbed jewelry salespersons and burglarized vehicles and jewelry stores – stealing jewelry, cash, and other goods.

5. Conspirators traveled and/or induced others to travel and/or transport the stolen jewelry, cash, and other goods across state lines. The conspirators conducted business in interstate and foreign commerce and the conspiracy affected interstate and foreign commerce as contemplated by Title 18, United States Code, Sections 2314 and 2315.

6. Members of the SATG sold the stolen jewelry to "fences," who are individuals who purchase illegally obtained goods, and using various money laundering methods, converted those goods into cash proceeds.

7. **MARK SIMON**, a fence, would travel to the Southern District of Florida and elsewhere to view and purchase the stolen jewelry from the SATG. As part of these transactions, **MARK SIMON** would meet members of the SATG in a hotel room that was often rented by a co-conspirator using fraudulent identification to conceal the identity of the co-conspirators and location of the co-conspirators and/or jewelry.

8. After purchasing the stolen jewelry, **MARK SIMON** would return to New York with the stolen jewelry. Sometime after returning to New York, **MARK SIMON** would mail packages containing United States currency from New York to Florida to the members of the SATG as payment for the stolen jewelry. **MARK SIMON** would mail the packages containing

3

the United States currency to a business using a fake or fraudulent name as the recipient to conceal the identity of the co-conspirators and the nature of the transactions.

9.  **MARK SIMON** would take additional steps to conceal the transactions, including melting the gold jewelry and selling it to a refiner.

All in violation of Title 18, United States Code, Section 1956(h).

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy, and to affect the object and purposes thereof, **MARK SIMON**, the defendant, and others known and unknown to the Grand Jury, committed various overt acts, including, but not limited to, the following:

1.  On or about September 19, 2019, members of the SATG committed a vehicular burglary in Boca Raton, Florida, stealing assorted jewelry valued at approximately $732,000.

2.  Approximately a few days after the Boca Raton vehicular burglary, **MARK SIMON** traveled to the Miami, Florida area to purchase the stolen jewelry.

3.  The members of the SATG who participated in the Boca Raton vehicular burglary sold the stolen jewelry to **MARK SIMON**, who returned to New York with the stolen jewelry.

4.  A short time after returning to New York, **MARK SIMON** mailed approximately $80,000 to $100,000 to the members of the SATG who participated in the Boca Raton vehicular burglary, which was split evenly among the burglary participants.

5.  On or about November 7, 2019, members of the SATG robbed a jewelry salesman of assorted jewelry in Miami Beach, Florida, valued at approximately $125,000.

6.  On or about November 9, 2019, **MARK SIMON** flew from New York to Fort Lauderdale, Florida, to purchase the stolen jewelry.

7. **MARK SIMON** met with the members of the SATG who participated in the Miami Beach robbery at a hotel in the Miami, Florida area and purchased the stolen jewelry for approximately $25,000 to $35,000, which was split evenly among the robbery participants.

8. On or about January 23, 2020, members of the SATG robbed a traveling jewelry salesman of assorted jewelry in Fort Pierce, Florida, valued at approximately $150,000.

9. On or about January 26, 2020, **MARK SIMON** flew from New York to Fort Lauderdale, Florida, to purchase the stolen jewelry.

10. On or about January 26, 2020, **MARK SIMON** rented a vehicle from Fort Lauderdale/Dania Beach, Florida.

11. On or about January 26, 2020, **MARK SIMON** shared multiple telephone calls with a member of the SATG who participated in the Fort Pierce robbery.

12. On or about January 26, 2020, **MARK SIMON** met with members of the SATG who participated in the Fort Pierce robbery and agreed to purchase the stolen jewelry for approximately $30,000 to $40,000 as payment for the stolen jewelry, which was split evenly among the robbery participants.

13. On or about February 6, 2020, members of the SATG robbed a traveling jewelry salesman's assistant of assorted jewelry in Boynton Beach, Florida, valued at approximately $2,600,000.

14. Between on or about February 20, 2020, to on or about February 22, 2020, a member of the SATG who participated in the Boynton Beach robbery placed multiple calls to **MARK SIMON**.

15. On or about February 22, 2020, **MARK SIMON** flew from New York to Fort Lauderdale.

16. On or about February 22, 2020, **MARK SIMON** rented a vehicle from Fort Lauderdale/Dania Beach, Florida.

17. On or about February 22, 2020, **MARK SIMON** rented a hotel room in Miami Lakes, Florida.

18. On or about February 22, 2020, **MARK SIMON** met with members of the SATG who participated in the Boynton Beach robbery and agreed to purchase a portion of the stolen jewelry.

19. Sometime after meeting with members of the SATG, **MARK SIMON** mailed money to members of the SATG who participated in the Boynton Beach robbery.

20. One member of the SATG traveled to New York and met **MARK SIMON** to receive his/her portion of the money and a co-conspirator's portion.

21. On or about March 6, 2020, members of the SATG burglarized a jewelry store in Dalton, Georgia, stealing assorted jewelry valued at approximately $1,000,000.

22. Between on or about March 4, 2020, and on or about March 8, 2020, **MARK SIMON** and a member of the SATG who participated in the Dalton, Georgia burglary shared multiple phone calls.

23. On or about March 8, 2020, **MARK SIMON** flew from New Jersey to Georgia to purchase the stolen jewelry.

24. On or about March 8, 2020, after meeting with **MARK SIMON**, the members of the SATG who participated in the Dalton, Georgia burglary decided not to sell the jewelry to **MARK SIMON**.

25. On or about December 28, 2020, **MARK SIMON** paid a member of the SATG $16,000 for stolen jewelry using a check payable to the SATG member's business.

26. On or about July 17, 2021, **MARK SIMON** sent a message inquiring about stolen jewelry to a member of the SATG using a phone application.

27. On or about July 20, 2021, **MARK SIMON** sent a message inquiring about stolen jewelry to a member of the SATG using a phone application.

## FORFEITURE
## (18 .S.C. § 982(a)(1))

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **MARK SIMON**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, each defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation pursuant to Title 18, United States Code, Section 982(a)(1).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p).

[Rest of page intentionally blank.]

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, all made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

_____
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

_____
BRIAN DOBBINS
ASSISTANT UNITED STATES ATTORNEY

_____
LAKEITA F. ROX-LOVE
TRIAL ATTORNEY

_____
CHRISTOPHER D. USHER II
TRIAL ATTORNEY